IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THE FIRST LIBERTY INSURANCE CORPORATION,** <br>     **Plaintiff,** <br><br> v. <br><br> **SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST,** <br>     **Defendant.** | CIVIL ACTION <br><br><br> NO. 21-CV-04471 |

## MEMORANDUM OPINION

  Plaintiff First Liberty Insurance Corporation ("First Liberty") and Defendant Selective Insurance Company of the Southeast ("Selective") provide general commercial liability insurance. First Liberty's claims against Selective arise from an underlying slip-and-fall action brought by Louellen Naylor-Cooper against a Rite Aid pharmacy (the "Underlying Action"). The Underlying Action is currently pending in the Court of Common Pleas.

  In its Complaint, First Liberty asserts that it is not legally obligated to defend Rite Aid in the Underlying Litigation, but "has been forced" to do so because Selective abdicated its own duty to defend the pharmacy. First Liberty now seeks a declaratory judgment that Selective: (1) has a duty to defend and indemnify Rite Aid; and, (2) must reimburse First Liberty for the cost of defending the Underlying Action, as well as costs associated with bringing this action. Selective moves to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because the terms of the contracts governing Selective's duty to defend Rite Aid are ambiguous, Selective's Motion will be denied.

  **I. BACKGROUND**

  The following facts are taken from the Complaint and the appended exhibits. They are assumed to be true for purposes of this Motion to Dismiss. *See, e.g.*, *Phillips v. Cnty. of*

*Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  On March 11th, 2018, Naylor-Cooper slipped on a puddle and fell in a Chester, Pennsylvania Rite Aid store.  At the time, Rite Aid used Expert Janitorial, d/b/a National Janitorial Solutions ("Expert Janitorial") as a contractor to clean its pharmacies.  Expert Janitorial, in turn, brought in Tri-State Building Services ("Tri-State") as a subcontractor to provide cleaning services in its stead.

Expert Janitorial and Tri-State have a Master Services Agreement (the "Agreement") that governs the terms of the services provided to Expert Janitorial's customers, including Rite Aid.  The Agreement requires Tri-State to obtain commercial general liability insurance that would provide additional insured status to third party entities.  In particular, the Agreement requires Tri-State to obtain a policy that had either: (1) a "blanket additional insured statement" for "any and all work performed under written agreement"; or, (2) a "CG 2010 endorsement with verification of coverage" (the "Additional Insured Provision").[1]

Of the two options, Tri-State elected the former.  It obtained a policy from Selective (the "Selective Policy") that contained a blanket endorsement which covered any organization "whom [Tri-State] ha[s] agreed in a written contract, written agreement or written permit that such . . . organization be added as an additional insured on [Tri-State's] policy" (the "Selective Endorsement").[2]

---

[1] An "endorsement" is "an amendment to an insurance policy." *Endorsement*, *Black's Law Dictionary* (11th ed. 2019).  A CG 2010 endorsement is a standard endorsement form commonly used to add an additional insured and cover the latter with respect to "liability arising out of '[the named insured's] work." *See, e.g., Pardee Const. Co. v. Ins. Co. of the West*, 92 Cal. Rptr. 2d 443, 454 (Cal. Ct. App. 2000) (discussing CG 2010 endorsement).

[2] First Liberty's Complaint did not include any attachments.  However, Selective attached to its Motion—and both parties relied upon—relevant portions of the Master Services Agreement and the Selective's Policy.  Documents not attached to a complaint may be considered without converting a motion to dismiss to a motion for summary judgment when they are "integral to or explicitly relied upon in the complaint." *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  Because the Master Services Agreement and Selective's policy are both "explicitly relied upon" in First Liberty's Complaint, these agreements are considered in ruling upon Selective's Motion to Dismiss.

On December 21, 2019, Naylor-Cooper brought suit against Rite Aid, Expert Janitorial, and Tri-State, alleging that they were negligent in failing to clean the floor, which negligence led to her fall. As Tri-State's insurer, Selective agreed to defend Expert Janitorial pursuant to the Selective Endorsement. But it refused to defend Rite Aid, on grounds that there is no "written contract, written agreement or written permit" that adds Rite Aid as an additional insured under the Selective Policy.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. When analyzing a motion to dismiss, the Complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Legal conclusions are disregarded, well-pleaded facts are taken as true, and a determination is made as to whether those facts state a "plausible claim for relief." *Id*. at 210-11.

## III. DISCUSSION

Selective argues that First Liberty failed to state a claim because Selective has no duty to defend Rite Aid under the plain language of the Selective Policy. Under Pennsylvania law,[3] a

---

[3] The parties both cite to Pennsylvania law in making their arguments.

two-step analysis is used to assess whether an insurer has a duty to defend.  First, the scope of coverage under the policy must be determined.  *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 226 (3d Cir. 2005).  Next, "the complaint in the underlying action" is examined "to determine whether it triggers coverage."  *Id.*; *see also Kvaerner Metals Div. of Kvaerner, U.S. v. Com. Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006).  An insurer has no duty to defend if the underlying claim, as alleged, does not fall within the scope of coverage provided by the policy.  *Id.* at 899-900.

For purposes of this Motion, the parties only raise arguments at the first step of the analysis: what the scope of coverage is under the Selective Policy—specifically whether Rite Aid falls within that scope as an additional insured.  Selective contends that, under principles governing the interpretation of insurance policies, First Liberty cannot show that Rite Aid is an additional insured.  A review of those principles is therefore in order.

### A. Principles of Policy Interpretation

The first question to address is whether the Selective Policy's language is ambiguous or unambiguous.  *Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co. of Am.*, 2020 WL 7024287, at *2 (E.D. Pa. Nov. 30, 2020) (citing *Kvaerner*, 908 A.2d at 896).  "When policy language is clear and unambiguous, a court applying Pennsylvania law must give effect to that language."  *Id.*  But when language is ambiguous, "the factfinder shall resolve the ambiguity."  *12th St. Gym, Inc. v. Gen. Star Indem. Co.*, 93 F.3d 1158, 1166 (3d Cir. 1996).  "Ambiguity exists where the language of the [policy] is 'reasonably susceptible of different constructions and capable of being understood in more than one sense.'"  *Gen. Refractories Co. v. First State Ins. Co.*, 855 F.3d 152, 159 (3d Cir. 2017) (quoting *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (1999)); *Jacobs Constructors, Inc. v. NPS Energy Servs., Inc.*, 264 F.3d

4

365, 376 (3d Cir. 2001).  However, insurance policies should be read "to avoid ambiguities and not torture the language so as to create them." *Id.* (citing *St. Paul Fire & Marine Ins. Co. v. U.S. Fire Ins. Co.*, 655 F.2d 521, 524 (3d Cir. 1981)).  "The words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning" may all be considered.  *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 93 (3d Cir. 2001); *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1011 (3d Cir. 1980).

### B.  Existence of a "written contract, written agreement or written permit"

The Selective Endorsement provides that Tri-State may add as an additional insured any organization "whom [Tri-State] ha[s] agreed in a written contract, written agreement or written permit that such . . . organization be added as an additional insured on [Tri-State's] policy."  Under Selective's interpretation of this clause, to add Rite Aid as an additional insured under the Selective Policy, Tri-State would have had to enter into a separate "written contract, written agreement or written permit" with Rite Aid.  It reasons that because there is no such agreement between Tri-State and Rite Aid, Rite Aid was never added to the Selective Policy as an additional insured, and therefore Selective had no duty to defend Rite Aid in the Underlying Litigation.

In support of its argument, Selective cites *Selective Ins. Co. of Am. v. Boy Scouts of Am.*, 2018 WL 1609342 (E.D. Pa. Apr. 2, 2018).  There, the policy's additional insured endorsement provided coverage to "[a]ny person or organization with whom you have agreed in a written contract, written agreement or written permit that such person or organization be added as an additional insured on your policy." *Id.* at *1.  Because no written agreement between the named

5

insured and the plaintiffs in that case was ever signed,[4] the court found that the insurer had no duty to defend the plaintiffs in the underlying litigation. *Id.* at *3.

First Liberty distinguishes *Boy Scouts*. It argues that, because the clause in *Boy Scouts* only permitted the named insured to add "[a]ny . . . organization *with* whom [you] agreed in a written contract" to be added to the policy, the endorsement in that case required the party benefitting from additional insured coverage to be in privity of contract with the named insured. Here, by contrast, the word "with" is missing from the Selective Endorsement, which only defines an additional insured as "any . . . organizations *whom* you have agreed in a written contract . . . that such person or organization be added as an additional insured on your policy." Consequently, First Liberty argues that Tri-State never needed to enter into an agreement *with* Rite Aid for the latter to qualify as an additional insured under the Selective Policy. Rather, Tri-State added Rite Aid as an additional insured when it agreed in "a written contract"—the Agreement with Expert Janitorial—to obtain insurance that provided "additional insured status" for "any and all work performed under written agreement," including Experts Janitorial's work for Rite Aid.

Both parties' interpretations of the Selective Endorsement are reasonable, indicating that the provision is ambiguous, *i.e.*, susceptible to being understood in more than one sense. *Jacobs Const.*, 264 F.3d at 376. On one hand, First Liberty is correct that the absence of the word "with" in the Selective Policy suggests that Selective and Tri-State may have intended for Tri-State to have a greater degree of flexibility when agreeing to add an additional insured. *See Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982) ("Courts in interpreting a contract do not

---

[4] The issue in *Boy Scouts* was not that no agreement between the named insured and the plaintiff existed, but rather that the pertinent agreement was never signed, as required by the terms of the policy in that case. *Id*. at *2.

assume that its language was chosen carelessly.") (citing *Moore v. Stevens Coal Co.*, 173 A. 661, 662 (Pa. 1934)).  On the other hand—without more—it cannot be said conclusively that the absence of only one word in the Selective Endorsement gives it a meaning diametrically different from the otherwise identical clause in *Boy Scouts*.  *C.f. Whitman v. Am. Trucking Assocs.*, 531 U.S. 457, 468 (2001) (noting, in statutory interpretation context, that one does not "hide elephants in mouseholes.")  Because the language of the Selective Endorsement is ambiguous, its interpretation is for the finder of fact, and Selective's Motion must be denied. *See, e.g.*, *IKB Int'l S.A.  v. Wilmington Tr. Co.*, 774 F. App'x 719, 724 (3d Cir. 2019) ("A motion to dismiss must be denied when the term of a contract is ambiguous . . . because ambiguous terms are interpreted by the jury, unambiguous ones by the court.") (internal citations and quotations omitted).

      An appropriate order follows.

                                          **BY THE COURT:**

                                          /s/Wendy Beetlestone, J.

                                          **WENDY BEETLESTONE, J.**