IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THE FIRST LIBERTY CORPORATION**<br>          **Plaintiff,**<br><br>                    v.<br><br>**SELECTIVE INSURANCE COMPANY**<br>**OF THE SOUTHEAST,**<br>          **Defendant.** | CIVIL ACTION<br><br><br><br><br>NO.  21-4471 |

## MEMORANDUM OPINION

Two insurance companies, Plaintiff First Liberty Insurance Company ("First Liberty") and Defendant Selective Insurance Company of the Southeast ("Selective"), dispute which one is obligated to defend a Rite Aid pharmacy in a state court negligence action.  First Liberty has been providing Rite Aid with a defense, but seeks (a) a declaratory judgment that Selective instead owes a duty to defend and indemnify Rite Aid, and (b) monetary damages reimbursing the costs incurred in the defense.  First Liberty now moves for partial summary judgment pursuant to Federal Rule of Civil Procedure 56, seeking a declaration that Selective is obligated to defend Rite Aid and reimburse First Liberty for past defense costs.  For the reasons that follow, First Liberty's Motion shall be denied.

   I.     BACKGROUND

In December 2019, LouEllen Naylor-Cooper filed a negligence action (the "Underlying Action") in the Philadelphia County Court of Common Pleas, alleging that she slipped and fell on a wet floor in a Chester, Pennsylvania Rite Aid store.  Naylor-Cooper's lawsuit named as defendants four Rite Aid entities ("Rite Aid"); Expert Janitorial, LLC ("Expert Janitorial"), a company Rite Aid engaged to provide janitorial services at its stores; and Tri-State Building

1

Services, LLC ("Tri-State"), Expert Janitorial's subcontractor. According to Rite Aid's records, Tri-State provided janitorial services at the Chester location on the day Naylor-Cooper alleges she was injured. But the issue before this Court does not concern who is liable for Naylor-Cooper's injuries. It concerns who is to pay for Rite Aid's defense in the Underlying Action: First Liberty, which insures Expert Janitorial under a commercial general liability policy, or Selective, which insures Tri-State. Although First Liberty has been providing Rite Aid with a defense in the Underlying Action, it argues that it is Selective that has a duty to defend.

First Liberty repeats the same argument it made when opposing Selective's Motion to Dismiss—that the Court can resolve whether Rite Aid is an additional insured under Tri-State's policy with Selective. Determining Rite Aid's additional insured status depends on the proper interpretation of two interrelated contract provisions: (1) the Master Service Agreement between Tri-State and Expert Janitorial ("Subcontracting Agreement"), which required Tri-State to obtain certain insurance; and (2) the policy Tri-State subsequently purchased from Selective ("Selective Policy"), which contained an additional insured endorsement ("Selective Endorsement") extending coverage to certain third parties. In deciding the Motion to Dismiss, the Court concluded that:

> Both parties' interpretations of the Selective Endorsement are reasonable, indicating that the provision is ambiguous, *i.e.*, susceptible to being understood in more than one sense. . . . Because the language of the Selective Endorsement is ambiguous, its interpretation is for the finder of fact, and Selective's Motion must be denied.

*First Liberty Ins. Co. v. Selective Ins. Co. of the Se.*, 2022 WL 1557269, at * 3 (E.D. Pa. May 17, 2022) (citing *IKB Int'l S.A. v. Wilmington Tr. Co.*, 774 F. App'x 719, 724 (3d Cir. 2019)).

## II.   DISCUSSION

Evaluating an insurer's duty to defend under Pennsylvania law (which both parties agree

2

applies here) requires a two-step analysis: "First, the scope of coverage under the policy must be determined. Next, 'the complaint in the underlying action' is examined 'to determine whether it triggers coverage.'" *First Liberty Ins. Co.*, 2022 WL 1557269, at *2 (citing *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 226 (3d Cir. 2005); *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006)). At the motion to dismiss stage, the parties' arguments only concerned the first step—whether Rite Aid fell within the scope of the Selective Policy. First Liberty argues that the Court's Motion to Dismiss opinion itself, which held that the ambiguous policy provision must be interpreted by a jury, effectively resolves this portion of the analysis in its favor. First Liberty therefore goes on to make arguments concerning the second step—whether Naylor-Cooper's complaint triggered coverage under the policy—as well. However, because this Motion can be decided solely based on First Liberty's arguments concerning the scope of the Selective Policy, First Liberty's arguments on the second step will not be addressed.

    A. **First Liberty's Argument**

    The Selective Endorsement extends additional insured status to "any person or organization whom [Tri-State] ha[s] agreed in a written contract, written agreement or written permit that such person or organization be added as an additional insured on [Tri-State's] policy." In opposing the Motion to Dismiss, First Liberty argued that Tri-State agreed to add Rite Aid as an additional insured through the Subcontracting Agreement, which required Tri-State to obtain insurance policies that included "Additional Insured Status" provisions "for any and all work performed under written agreement." Selective disagreed, arguing that the Subcontracting Agreement, which Rite Aid was not a party to and which did not expressly name Rite Aid as an additional insured, did not satisfy the policy's written agreement requirement. In

3

response, First Liberty argued that the policy language—"whom [Tri-State] ha[s] agreed in a written contract"—does not require privity between Tri-State and the additional insured, and Tri-State did designate Rite Aid an additional insured when it agreed to purchase additional insured coverage for "all work" performed under the Subcontracting Agreement.

Because both parties offered reasonable interpretations of the Selective Endorsement's additional insured provision, the Court held that it was ambiguous and denied Selective's Motion to Dismiss. As explained in the opinion, courts must give effect to unambiguous terms in insurance policies, but "when language is ambiguous, 'the factfinder shall resolve the ambiguity.'" *First Liberty Ins. Co.*, 2022 WL 1557269, at \*2 (quoting *12th St. Gym, Inc. v. Gen. Star Indem. Co.*, 93 F.3d 1158, 1166 (3d Cir. 1996)). Because this function is assigned to the finder of fact, granting a motion to dismiss on claims arising from ambiguous contract provisions is inappropriate. *See id.* at \*3. Summary judgment is inappropriate for the same reason. *See In re Color Tile, Inc.*, 475 F.3d 508, 515-16 (3d Cir. 2007) ("As a general matter, . . . when a contract is ambiguous, its interpretation becomes a question of fact and summary judgment is inappropriate."); *Pittston Co. Ultramar Am. Ltd. v. Allianz Ins. Co.*, 124 F.3d 508, 523 (3d Cir. 1997) (holding that summary judgment was inappropriate because two reasonable interpretations of an insurance contract existed, rendering it ambiguous).

Without presenting anything additional to clarify the proper interpretation of the provision, First Liberty argues that the ambiguity itself warrants summary judgment. In support of its argument, First Liberty cites cases articulating the rule of construction that ambiguous provisions in insurance policies are to be construed "in favor of the insured to further the contract's prime purpose of indemnification and against the insurer. . . ." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016); *see also Meyer v. CUNA Mut. Ins. Soc'y*,

4

648 F.3d 154, 163-64 (3d Cir. 2011); *Med Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999); *Liberty Mut. Ins. Co. v. Selective Ins. Co. of Am.*, 346 F. Supp.3d 753, 758 (E.D. Pa. 2018). This rule of construction complicates the general principle that ambiguous contract terms are to be interpreted by the jury, as courts will sometimes rely on it to resolve ambiguous insurance policy terms themselves. *See, e.g.*, *Meyer*, 648 F.3d at 163 (affirming the district court's conclusion that "where two reasonable interpretations creating an ambiguity exist, [its role was] to choose the interpretation favoring the insured"). However, the rule cannot be properly applied in this case.

### B. The *Contra Proferentem* Rule

The rule cited by First Liberty is an insurance-specific variation of the more general rule of contract construction, also referred to as *contra proferentem*, that ambiguities are to be construed against the drafter. Rather than focusing on the parties' intent, *contra proferentem* "provides a default rule based on public policy considerations[.]" *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417 (2019). Although the rule is long-established, it is "not intended as a talismanic solution to the construction of ambiguous language." *Windows v. Erie Ins. Exch.*, 161 A.3d 953, 957 (Pa. Super. 2017) (quoting *Burns Mfg. Co v. Boehm*, 356 A.2d 763, 767 n.3 (Pa. 1976)); *see also Lamps Plus*, 139 S. Ct. at 1417 (*Contra proferentem* "applies 'only as a last resort' when the meaning of a provision remains ambiguous after exhausting the ordinary methods of interpretation.").

In the insurance context, the rationale for this rule is based in the realities of the commercial relationship between insurers and consumers. *Meyer*, 648 F.3d at 163-64 ("The policy rationale underlying strict application of the doctrine is that because most insurance agreements are drafted by the insurance industry, they are essentially contracts of adhesion.");

*Eastcoast Equip. Co. v. Md. Cas. Co.*, 218 A.2d 91, 98 n.10 (Pa. Super. 1966) ("An insurance policy is, in general nature, a 'contract of adhesion,' where the purchaser has no bargaining power, and thus the policy must be construed strictly against the insurer.").

Reflecting this rationale, many formulations of the rule—including those in the cases cited by First Liberty—require not only that the ambiguity be construed against the insurer but that it also be construed *in favor of the insured*. See *Ramara*, 814 F.3d at 674 ("[W]e must construe any ambiguities in the Policy '*in favor of the insured* to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy and controls coverage.'"); *Meyer*, 648 F.3d at 163 ("Where a term is ambiguous, it is to be construed against the insurer, *in favor of the insured*."); *Med. Protective Co.*, 198 F.3d at 104 ("Ambiguous provisions in an insurance policy must be construed against the insurer *and in favor of the insured*; any reasonable interpretation *offered by the insured*, therefore, must control."); *Liberty Mut. Ins. Co.*, 346 F. Supp.3d at 758 (quoting *Ramara*, 814 F.3d at 674) (emphasis added in all). This portion of the rule—construction "in favor of the insured"—makes its application inapt in this case, where the insured's interests are not clear from the record.

### C. Inapplicability of the Rule

Because the rule is intended to regulate the relationship of and counterbalance unequal bargaining power between insurers and their insureds, it cannot be mechanically applied here in a dispute between insurers. See *Keystone Shipping Co. v. Home Ins. Co.*, 840 F.2d 181, 185 (3d Cir. 1988) ("The fact that Pennsylvania courts would act more favorably towards an insured in a dispute with his insurer because of their disparate bargaining power does not suggest they would be other than neutral in a dispute among the insurers themselves."); *Asplundh Tree Expert Co. v. Pac. Emps. Ins. Co.*, 1992 WL 382373, at *12 (E.D. Pa. Dec. 9, 1992) ("A general maxim . . .

states that ambiguous terms in a policy are to be construed strictly against the insurer and in favor of the insured. This general tenet is inapplicable here, however, because the controversy at hand does not involve Asplundh, the insured, but Pacific Employers and National Union, two insurers."); *cf. Nautilus Ins. Co. v. Westfield Ins. Co.*, 2017 WL 4284153, at *8 n.11 (E.D. Pa. Sept. 27, 2017) (declining to apply Pennsylvania's rule construing ambiguous lease terms "against the lessor and in favor of the lessee" because "Defendant is not the lessee, and an interpretive rule that protects tenants is not necessarily applicable to a tenant's insurer"). Even if the rule could be applied in a dispute between insurers, it would still require a clear delineation of the insured's interests, which is missing here.[1] *See Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1366-67 (Pa. 1987) ("Although this case involves a controversy between two insurers, we will consider each policy *from the point of view of the insured* and construe each policy mostly strongly against the insurer." (emphasis added)).[2]

The insured's interest is not clear in this case, as it would be in a dispute between an insurer and a named insured, *see, e.g.*, *Meyer*, 648 F.3d at 159, or between an insurer and a party

---

[1] The application of the rule may also be inappropriate for another reason: under Pennsylvania law, "the principle that ambiguities in policies should be strictly construed against the insurer does not control the situation where large corporations, advised by counsel and having equal bargaining power, are the parties to a negotiated policy." *E. Associated Coal Corp. v. Aetna Cas. & Sur. Co.*, 632 F.2d 1068, 1075 (3d Cir. 1980); *see also State Farm Mut. Auto. Ins. Co. v. Philly Fam. Prac., Inc.*, 525 F. Supp.2d 718, 726 n.5 (E.D. Pa. 2007) ("[E]ven if it were procedurally appropriate at this stage, use of the *contra proferentem* rule is improper where the parties are both sophisticated or have both thoroughly negotiated the contract."). Therefore, even if the rule could be applied in a dispute between insurers, it still could not be applied in this case without first determining Tri-State's sophistication and role in negotiating the Selective Policy's terms. Because neither party has addressed the circumstances of Tri-State and Selective's negotiation of the Selective Policy, this remains a genuine issue of material fact. *See State Farm Mut. Auto. Ins. Co.*, 525 F. Supp.2d at 726 n.5 (declining to apply *contra proferentem* at the summary judgment stage, in part because the parties' sophistication and bargaining power were unclear).

[2] *Erie Insurance Exchange v. Transamerica Insurance Co.* involved a dispute between two insurance companies that issued separate policies to the same couple. The insurers disputed which policy, automobile or homeowner's insurance, covered damages resulting from a car accident caused by the couple's toddler. Resolving coverage hinged on interpretation of the term "use" of an automobile. Because the court found that only one interpretation was possible, as an alternative interpretation would "stretch[] policy construction beyond reasonable bounds," the case neither references the *contra proferentem* rule nor clarifies whether it should be applied in disputes between insurers over ambiguous policy terms. 533 A.2d at 1367.

clearly designated as an additional insured, *see, e.g.*, *Ramara*, 814 F.3d at 666.  In cases like those involving a party clearly insured under the contested policy, resolving ambiguities in the insured's favor is a straightforward exercise—ambiguities can be resolved to maximize coverage through broad construction of terms extending coverage and narrow construction of terms establishing exclusions.  And if the insured's interest is less clear-cut, insureds who are parties to the litigation contesting the policy's interpretation can explain and advocate for their favored interpretation.

      Neither is true here.  First, the dispute over the policy's interpretation does not concern the scope of Tri-State's own coverage, but rather the process for adding third parties as additional insureds.  Second, Tri-State is not a party to this litigation, and therefore has not presented its side.  Nor has either party offered anything to explain what "in favor of the insured" means in this context.  First Liberty claims, without explanation, that its proffered interpretation would construe the policy "in favor of Rite Aid."  But slotting in Rite Aid as "the insured" under the rule's rubric is an exercise in circular reasoning—whether Rite Aid is insured under the Selective Policy is the precise question First Liberty seeks to employ *contra proferentem* to answer.  Additionally, while it is obvious that this interpretation best serves First Liberty, there is no reason to assume that First Liberty and Tri-State have coextensive interests.  First Liberty proposes an interpretation of the Selective Endorsement that, in the apparent absence of an agreement between Tri-State and Rite Aid, would still allow Rite Aid to have been added to the policy as an additional insured.  While it is clear that resolving the ambiguity this way would serve First Liberty's interests by potentially relieving it of the obligation to defend Rite Aid in the Underlying Action, it is not equally clear that Tri-State is better served if Rite Aid is covered

by Selective.[3] It does not follow from the fact that Tri-State and Selective were on opposing sides of the Selective Policy, and First Liberty and Selective are on opposing sides of this litigation, that Tri-State's interests under the policy are identical to First Liberty's interests here. Without clarification of which interpretation favors Tri-State, there is no reason for the Court to be "other than neutral" between the interpretations offered by two insurers, both of whom seek to minimize their coverage obligations. *See Keystone Shipping Co.*, 840 F.2d at 185. As the Selective Policy remains ambiguous, summary judgment cannot be granted.

### D. Ambiguity in the Subcontracting Agreement

Further, adopting the interpretation of Selective Endorsement favored by First Liberty would not conclusively resolve Rite Aid's additional insured status. The ambiguity in the Selective Endorsement concerns only the type of written agreement required—either any agreement in which Tri-State designates Rite Aid an additional insured or an agreement *between* Tri-State and Rite Aid. Given the apparent absence of a written agreement between Tri-State and Rite Aid, the first construction is necessary but not sufficient for First Liberty to prevail. First Liberty would also have to show that Tri-State agreed to add Rite Aid as an additional insured in some written agreement. First Liberty argues that Tri-State did so in the Subcontracting Agreement but, like the proper interpretation of the Selective Endorsement, the proper interpretation of the Subcontracting Agreement is heavily disputed by the parties.

First Liberty argues that because Tri-State agreed to provide additional insured coverage "for any and all work performed" under the agreement and did perform work under the

---

[3] It is not even clear that Rite Aid would be better served. First Liberty has been providing Rite Aid with a defense in the Underlying Action as an additional insured under Expert Janitorial's policy. Perhaps it is in Rite Aid's interest to be covered as an additional insured under as many policies as possible, but this is far from readily apparent.

agreement for Rite Aid, the Subcontracting Agreement constitutes the "written agreement" required by the Selective Endorsement.  Selective disagrees, arguing that the Subcontracting Agreement contains no provision obligating Tri-State to obtain additional insured coverage for either Expert Janitorial's customers generally or Rite Aid specifically.  In other words, First Liberty argues that because the additional insured requirement in the Subcontracting Agreement "was drafted to flow with the work itself," Tri-State agreed to obtain additional insured status for both Expert Janitorial and its customers.  Selective argues that the "for any and all work performed" language in the Subcontracting Agreement only required Tri-State to obtain additional insured status for Expert Janitorial.

As with the Selective Endorsement, both interpretations are reasonable, and the provision is ambiguous.  *See Gen. Refractories Co. v. First State Ins. Co.*, 855 F.3d 152, 159 (3d Cir. 2017) ("Ambiguity exists where the language of the contract is 'reasonably susceptible of different constructions and capable of being understood in more than one sense.'").  On the one hand, Tri-State was to perform work under the contract for both Expert Janitorial and its customers, and other provisions of the Subcontracting Agreement do create specific obligations for Tri-State relating to Expert Janitorial's customers.  As "the entire contract should be read as a whole . . . to give effect to its true purpose," the additional insured provision could be interpreted as requiring coverage for both Expert Janitorial and its customers.  *Commonwealth ex rel. Kane v. UPMC*, 129 A.3d 441, 463-64 (Pa. 2015) (alteration in original) (quoting *Pritchard v. Wick*, 178 A.2d 725, 727 (Pa. 1962)).  But on the other hand, the omission of an explicit reference to Expert Janitorial's customers in the additional insured provision, given the inclusion of references to customers in other parts of the agreement, could be interpreted as deliberately limiting Tri-State's obligation to obtain additional insured status to Expert Janitorial alone.  *See Steuart v.*

*McChesney*, 444 A.2d 659, 662 (Pa. 1982) ("Courts in interpreting a contract do not assume that its language was chosen carelessly."). Even if *contra proferentem* could be applied to the Selective Policy, Rite Aid's additional insured status would remain unresolved and summary judgment could not be granted.

### III. CONCLUSION

First Liberty's invocation of the *contra proferentem* rule of construction does not change the Court's prior determination that the Selective Policy is ambiguous and must be interpreted by a jury. The Motion for Summary Judgment is therefore denied. An appropriate order follows.

**BY THE COURT:**

/s/Wendy Beetlestone, J.

**WENDY BEETLESTONE, J.**